UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASSOCIATED ENERGY GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-2019 |
| | § | |
| AIR CARGO GERMANY GMBH, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendant Volga-Dnepr Airlines's ("VDA") Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6), Plaintiff Associated Energy Group's ("AEG") claims against them. (Def's. Mot. to Dismiss, Doc. 3). After reviewing the pleadings, the motion and responses, the record, and the applicable law, the Court finds that it does not have personal jurisdiction over VDA. VDA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be granted. The motions to dismiss pursuant to 12(b)(5) and 12(b)(6) are dismissed as moot.

**I.     Background**

AEG is a Texas-based company with its principal place of business in Houston that sells jet fuel to air carriers at airport locations around the world. (Pl.'s Original Pet. ¶¶ 1, 6, Doc. 1-1). Between April 8, 2013 and April 15, 2013, AEG sold jet fuel to Defendant Air Cargo Germany GMBH ("Air Cargo"), a German-based air freight company, on three separate occasions at an airport in Nairobi, Kenya. (*Id.* ¶¶ 2, 7). On April 17, 2013, AEG sent Air Cargo an invoice for the jet-fuel purchase with instructions to remit payment to AEG's office in Nevada. (Invoice, Doc. 1-1 at 10). Air Cargo failed to pay the invoice and has since initiated insolvency proceedings in Germany. (Doc. 1-1 ¶ 8; Notice of Removal ¶ 9, Doc. 1).

On May 28, 2013, AEG filed a petition in Texas state court against Air Cargo and VDA, a Russian-based cargo airline with its principal place of business in Ulyanovsk, Russia. (Doc. 1-1 ¶ 3). In the petition, AEG asserts various causes of action, principally breach of contract, and seeks damages for the unpaid invoice and accrued interest in the total amount of $293,330.94. (*Id.* ¶¶ 14–17). VDA timely removed the action to this Court and moved to dismiss. In its notice of removal, VDA states that Air Cargo's consent for removal is not required as it is a nominal party and was never properly joined or served.  (Doc. 1 ¶ 9).  AEG does not contend otherwise and directs all of its arguments against VDA alone.  Accordingly, the Court finds that Air Cargo is not properly joined and disregards it in considering the motion at issue.

VDA is a member of the Volga-Dnepr Group, an air cargo conglomerate. (Def's. Reply to Pl's. Resp. to Mot. to Dismiss ¶¶ 1–2, Doc. 25). The Volga-Dnepr Group also includes AirBridge Cargo ("ABC"), Antonov Airlines ("AA"), and Unique Air Cargo ("UAC"). (*Id.* ¶¶ 1–3). UAC is a Delaware company with an office in The Woodlands, Texas. (Pl's. Resp. to Mot. to Dismiss ¶ 13, Doc. 5). UAC's stated purpose is to promote Volga-Dnepr services in North and South America. (*Id.*). It is disputed whether UAC is a subsidiary of or a sister company to VDA. (Doc. 5 ¶¶ 12–14; Doc. 25 ¶¶ 1–2).

VDA moves to dismiss AEG's claims against it for lack of personal jurisdiction. VDA argues that general jurisdiction in Texas is not proper because VDA's incorporation and principal place of business is in Russia and VDA lacks the additional contacts needed for general jurisdiction in Texas. (Doc. 3 ¶¶ 19–24). VDA does not maintain any offices or employees in Texas, does not have a registered agent in Texas, and does not own or lease property in the state. (*Id.* ¶ 14). VDA also disputes that the Court has specific jurisdiction over it because the underlying cause of action in the case did not arise out of its contacts with Texas. (*Id.* ¶¶ 25–28).

AEG opposes VDA's motion and makes three arguments to support personal jurisdiction over VDA in Texas. (Doc. 5 ¶¶ 10–32). First, AEG argues that jurisdiction is proper because VDA made several purchases of jet-fuel totaling over $3 million from AEG and other suppliers at Texas airports. (*Id.*). Second, UAC has an office in Texas which contributes substantial sales volume to the Volga-Dnepr Group (allegedly over 30% in 2011). (*Id.*) Third, AEG claims that VDA guaranteed the contract between AEG and Air Cargo, and therefore VDA was aware that AEG's agreements call for jurisdiction and venue in Texas. (*Id.*)

The "guaranty" to which AEG refers is contained in an email that VDA sent on April 18, 2012 from its office in Russia. (Email: "Invitation for the Fuel Tender 2012–2013, Doc. 3-4). VDA sent the email on behalf of itself, ABC, and AA to multiple jet-fuel-supply companies seeking bids/tenders for jet-fuel contracts between July 1, 2012 and June 30, 2013. (*Id.*). On April 23, 2012, AEG's United Kingdom office responded to the email to confirm its intent to participate in the tender. (Email: AEG's Reply, Doc. 3-5). The email included an attachment that explained the contract bidding process and the potential airports to be included in the bids. (Aff. of Jeff Stallones at 4–5, Doc. 6). AEG alleges that in the email VDA guaranteed that it would pay for any jet fuel that Air Cargo purchased from AEG. (Doc. 5 ¶¶ 4–9). AEG points to the following portion of the email as VDA's guarantee on purchases made by Air Cargo:

> Please also note that in March 2012 Volga-Dnepr Group acquired 49% of scheduled cargo operator Air Cargo Germany. Schedules and routes of both scheduled operators, AirBridge Cargo and Air Cargo Germany, are being synchronized through interline agreements. Fuel volumes of both airlines are combined, [sic] purchase and payments for refueling will be arranged by Volga-Dnepr Airlines, as the consolidated center for purchasing fuel for Volga-Dnepr Group, upon their agreements with suppliers.

(*Id.* ¶ 5).

## II.      Legal Standard

A court must find that it has personal jurisdiction over a defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."). Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. When the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). At this stage, the plaintiff need only make a *prima facie* case. *Johnston*, 523 F.3d at 602. Proof by a preponderance of the evidence is not required. *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)). Nevertheless, a court is not required to credit conclusory allegations even if they are uncontroverted. *See Panda Brandywine Corp. v. Potomoc Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident

defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston*, 523 F.3d at 609). To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Johnston*, 523 F.3d at 609).

A defendant establishes minimum contacts with a state if "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[T]here must be some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* at 475. Two types of minimum contacts exist: those that support general personal jurisdiction and those that support specific personal jurisdiction. *Johnston*, 523 F.3d at 609. The Supreme Court recently clarified the standards for both. *See Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746 (2014); *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014).

## III.   Discussion

### A.   *General Personal Jurisdiction*

General jurisdiction is all-purpose jurisdiction that exists where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those

activities." *Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. __ , __ , 131 S. Ct. 2846 (2011)); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609 (quoting *Subermersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Id.* at 610 (citing *Revell v. Lidvov*, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* (citing *Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)). Therefore, only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. *Daimler*, 134 S. Ct. at 760. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]…bases for general jurisdiction'" *Id.* (citing Brilmayer et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 728 (1988)). The Supreme Court, however, has not foreclosed entirely the possibility that a corporate defendant may be subject to general jurisdiction outside of those "paradigm all-purpose forums." *Id.*

In *Daimler*, Argentinean plaintiffs filed suit against a German company, Daimler, in the Northern District of California for actions that occurred outside of the United States. *Id.* at 751. The plaintiffs argued jurisdiction in California was proper based on the California contacts of

Daimler's subsidiary, Mercedes-Benz USA, LLC ("MBUSA"). MBUSA, a Delaware corporation with its principal place of business in New Jersey, served as Daimler's exclusive importer and distributor in the United States, maintained multiple facilities in California, including a regional office, and was the largest supplier of luxury vehicles to the California market. *Id.* at 752. MBUSA's California sales alone accounted for 2.4% of Daimler's worldwide sales. *Id.* The Court, while hinting MBUSA may not even be subject to general jurisdiction in California, assumed for its analysis that MBUSA qualified as at home in California and MBUSA's California contacts could be imputed to Daimler. *Id.* at 760. Despite these assumptions, the Court held there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* (footnote omitted). *Daimler* makes clear that a foreign corporation will not be subject to general jurisdiction simply by virtue of having an in-state subsidiary or affiliate. In order for a court to exercise general jurisdiction, "that corporation itself, not its managing agent or subsidiary or affiliate, must be 'at home' in the forum state." *Daimler*, 134 S. Ct. 746.

Here, it is undisputed that VDA is incorporated and has its principal place of business in Russia. Therefore, the paradigm bases for all-purpose jurisdiction do not exist and AEG must establish other systematic and continuous contacts that render VDA at home in this forum. AEG argues first that VDA's purchases of jet fuel from AEG and other suppliers at Texas airports establish the "minimum contacts" necessary to support a finding of general jurisdiction. *Daimler* forecloses this argument. Although VDA purchased over $3 million of jet fuel from AEG at Houston George Bush Intercontinental Airport between September 30, 2010 and July 30, 2012, these transactions alone are insufficient to support general jurisdiction over VDA in Texas. "[M]ere purchases, even if occurring at regular intervals…are not enough to warrant a State's

assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Daimler*, 134 S. Ct. at 757 (quoting *Helicopteros*, 466 U.S. at 418).

Next, AEG argues that VDA has established the necessary minimum contacts in Texas through UAC. AEG contends that UAC is VDA's Texas-based office and that in 2011 UAC accounted for over 30% of Volga-Dnepr Group's worldwide sales. Again, *Daimler* forecloses the argument. Assuming AEG's theory is true and UAC is "at home" in Texas and its contacts may be imputed to VDA, that still does not provide a basis to subject VDA to general jurisdiction in Texas. The mere fact that UAC does a large volume of sales throughout North America, and presumably in Texas, is not sufficient to find general personal jurisdiction over a foreign parent or sister company in Texas. As MBUSA in *Daimler*, UAC had no involvement with the underlying transaction that gave rise to the claim. UAC may account for a large volume of Volga-Dnepr Group's business, but as explained in *Daimler*, it is VDA that must be "at home" in Texas, not a VDA subsidiary or affiliate. AEG has not presented any evidence to establish VDA itself is at home in Texas. VDA does not maintain any offices or employees in Texas, does not have a registered agent in Texas, and does not own or lease property in the state. Other than pointing to VDA's jet-fuel purchases at various airports, AEG does not point to any other specific activity of VDA in Texas. Without evidence of activities specific to VDA, AEG's statement that "VDA engages in business in the state of Texas, and has had substantial contact with the state…" is conclusory, and as noted above, a court is not required to credit conclusory allegations. *See Panda Brandywine Corp.*, 253 F.3d at 869.

In its response, AEG also relies on *Crompton Corp. v. Clariant Corp.* for support, where a Louisiana district court found that it had personal jurisdiction over a foreign chemical

company, Atofina, S.A., because Atofina sold its products throughout the United States through a United States subsidiary company. *Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683 (M.D. La. 2002). *Crompton*, however, is easily distinguishable from the case at hand. *Crompton* was an antitrust suit based on the Clayton Act, which provides for broad nationwide-service of process, and the Fifth Circuit has held that when "jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether requirements of due process have been met." *Id.* at 688.

### B.     *Specific Personal Jurisdiction*

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851. The Supreme Court recently rearticulated the criteria for establishing specific jurisdiction. *See Walden*, 134 S. Ct. 1115. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The defendant's suit-related conduct must create a substantial connection with the forum state, and "the relationship must arise out of contacts that the defendant himself creates with the forum State"…with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121–22 (citing *Burger King*, 471 U.S. at 475; *Int'l Shoe*, 326 U.S. at 319). The plaintiff cannot be the only link between the defendant and the forum. It is the defendant's conduct that must form the necessary connections with the forum state to support the basis for specific jurisdiction. *Id.* at 1122–23 (citing *Burger King*, 471 U.S. at 478) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient

minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

To establish specific jurisdiction, AEG again points to VDA's purchase of jet-fuel from AEG in Houston between 2010 and 2012, and also to the email from VDA allegedly forming a contract that guaranteed payment for jet fuel Air Cargo purchased from AEG. These activities alone are not sufficient minimum contacts to establish specific jurisdiction in Texas. The multiple jet-fuel purchases by VDA from AEG in Houston are not connected in any way to the underlying claim. Additionally, the VDA email in question was sent from VDA's Russian office on behalf of multiple Volga-Dnepr Group companies, not just VDA, to multiple suppliers around the world seeking bids on future jet-fuel contracts. Even if AEG's theory is true, and the email is considered a contract between VDA and AEG, this fact alone is insufficient to establish specific jurisdiction over VDA in Texas. "[M]erely contracting with a resident of Texas is not enough to establish minimum contacts." *Moncrief*, 481 F.3d at 312 (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Furthermore, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)).

AEG argues *Transpo* establishes that a non-resident defendant who chooses to contract with a resident plaintiff is considered to have purposely availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that the resident plaintiff would in fact perform a material part of its obligations within the forum state. *See Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982). However, in *Moncrief*, the Fifth Circuit emphasized the "finding of jurisdiction in *Transpo* was supported not only by

foreseeability, but also by the fact that the forum state was 'clearly the hub of the parties' activities.'" *Moncrief*, 481 F.3d at 312 (quoting *Patterson v. Dietze*, 764 F.2d 1145, 1008–09 (5th Cir. 1985)). In *Moncrief*, Texas-based Moncrief contracted with Russian-based Gazprom to develop a natural gas field located in Russia. *Id.* at 310. Gazprom subsequently broke the contract and partnered with another company, and Moncrief brought suit. *Id.* The Court found mere foreseeability by Gazprom that it may be subject to suit in Texas was not enough to establish specific jurisdiction because the "hub of the parties' activities" was not in Texas. *Id.* at 312. The parties had negotiated and prepared key elements of the contract in Mexico and Russia, and the contract was to be performed in Russia. *Id.*

Here, unlike in *Moncrief*, it was not so foreseeable that VDA might be subject to suit in Texas. The email containing the alleged guarantee by VDA was sent from VDA's Russian office to suppliers around the world and contemplated entry into fuel contracts between international parties. Nevertheless, even if it were foreseeable to VDA that it could be sued by AEG in Texas, as in *Moncrief*, the "hub" of the parties' contractual activities was not in Texas. German-based Air Cargo purchased and received the jet-fuel from AEG in Kenya. Furthermore, the payment for the invoice for Air Cargo's jet-fuel purchase in Kenya was to be directed to an AEG address in Nevada, not Texas.

In sum, AEG has failed to meet its burden to establish personal jurisdiction over VDA. Without jurisdiction, the Court is unable to proceed to adjudication on the merits.

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Volga-Dnepr Airlines's Motion to Dismiss (Doc. 3) is **GRANTED**.  Plaintiff Associated Energy Group's case is **DISMISSED** without prejudice.

SIGNED at Houston, Texas, this 4th day of June, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE